## Gillispie *et al. vs* Walker and Harris.          CHANCERY.

### ERROR TO THE MADISON CIRCUIT.

*Equitable jurisdiction.     Lis pendens.     Trusts.*          Case 135.

JUDGE MARSHALL delivered the opinion of the Court.          *May* 30.

TURNER having had notice of the complainant's demand against Sidney Gillispie, and of the pendency of this suit against his Trustee and his heirs, to subject to the payment of said debt, the interest in the land which had descended to the heir, he cannot be regarded as a *bona fide* purchaser, in buying the land under his own execution against the heir, issued and levied after he had such notice, and after it had appeared, by the answer of the Trustee, that there was, in fact, nothing but the land out of which the complainant's demand could be satisfied; and especially as said execution issued on a judgment of a date long anterior to the death of Sidney Gillispie, and

*During the pendency of a suit in Chancery against a Trustee and the heir of* cestui que trust, *to subject the trust estate to the payment of* the debt of cestui que trust, *the trust estate is not liable to sale under an execution against the heir.*

for a debt which had no reference, in its origin, to the liability of this land. The land, it is true, was liable to this debt as soon as it came to the heir, but it was previously liable to the debts of the decedent, from whom it descended, and it was not freed from that liability by the descent. On the contrary, it is the effect and object of our statutes on this subject to continue that liability; and the remedy provided against heirs, whether separately or in conjunction with the executors or administrators, was expressly intended as a means of enforcing it; and although the original bill was filed in this case, and the levy and sale had been made by Turner, before the twelve months had expired, at the end of which the legal remedy is allowed against the heirs alone, when there is no personal representatives; it by no means follows, that the remedy in equity must be subject, in all cases, to a similar postponement, whereby the just priority of the creditors of the decedent may be defeated by the intervention of the creditor of the heirs. The postponement of the legal remedy against the heirs of the debtor was clearly not intended for the benefit of the creditors of the heirs, in comparison with the creditors of the decedent, but for the benefit of the real, in comparison with the personal estate; and we have no doubt that a Court of Equity may, at any time after the death of the debtor, interpose for the purpose of securing to his creditors the means of payment out of his land, in default of the personalty, and to prevent the creditors of the heir from monopolizing this fund. And although the original bill does not specifically show any necessity for the Chancellor's interposition for this purpose, yet that necessity is made sufficiently apparent by the facts which actually occurred, and which are introduced into the subsequent pleadings, when Turner is brought into the cause. He contends that the bill being prematurely brought, not only constituted no lien on the land, but was not such a *lis pendens* as to affect his purchase, because, at the time, the Chancellor had not a right, on the face of the pleadings, to subject the land. But conceding that the Chancellor could not then have subjected the land by decree, the pleadings showed an equity for its ultimate and speedy

When it is necessary to resort to a Court of Chancery to subject an estate held in trust which has devolved on the heir by descent, the proceeding need not be delayed for twelve months for administration to be taken out, especially where it appears there was no personal estate.—

—And where no administration was or likely to be taken out, the chancellor might even decree the proper relief before the twelve months expired.

subjection, and he had a right to pursue the subject for that purpose, which would give the suit the operation of a *lis pendens*. And besides, as Sidney Gillispie died a minor, leaving all his estate in the hands of a Trustee, and as no administration had been or was likely to be taken on his estate, and none was, in fact, necessary for its management, the Chancellor might well regard the Trustee as occupying the place of an executor or adminis. trator in the suit, and having before him all necessary parties, and a full representation of the estate, might have proceeded to give final relief before the end of the twelve months; because the Trustee could not be sued for the debt at law, and because there was no legal remedy between the end of six months from the death of S. Gillispie, when, in ordinary cases, an administrator may be sued, either alone or with the heirs, and the expiration of twelve months, when the heirs might be sued alone, if there were no administrator. The jurisdiction of the Chancellor, upon the original bill, is further supported by the consideration that Sidney Gillispie died entitled only to a use in the land, the legal title being in a Trustee; and although that use was, by our statute, subject to execution, and might, perhaps, have been subject to an execution against the heir for the debt of the original *cestui que use*, or for his own, still on general principles, a Trustee and the enforcement of the trust, are peculiarly within the jurisdiction of the Chancellor, and the Chancellor alone could hold the Trustee to an account of the rents and profits which he is called on by the bill to appropriate to complainant's demand; and on failure of these, the Chancellor having the heir as well as the Trustee before him, might, as we think, subject the land. On the ground then, that the suit was pending for the enforcement of a right, within the jurisdiction of the Chancellor, when Turner intervened, his purchase was properly disregarded, and the decree is affirmed.

*Turner* for plaintiffs: *Owsley & Goodloe* for defendants.